UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELTA UPSILON ALUMNI
CORPORATION, and MICHIGAN
CHAPTER OF DELTA UPSILON,

    Plaintiffs,

v.

RSUI INDEMNITY COMPANY,

    Defendant.
_____/

Case No: 13-13298

HONORABLE VICTORIA A. ROBERTS

## ORDER DENYING RECONSIDERATION

**I. INTRODUCTION**

Plaintiffs, Delta Upsilon Alumni Corporation and Michigan Chapter of Delta Upsilon ("Delta"), sued the Defendant, RSUI Indemnity Company ("RSUI"), to collect what they deem the outstanding balance of their insufficiently reimbursed insurance claim, which was filed after a 2008 fire at Delta's fraternity house in Ann Arbor, MI. RSUI filed a Motion for Reconsideration (Dkt. No. 32). It seeks review of the Court's Order (Dkt. No. 30) denying RSUI's Motion for Summary Judgment (Dkt. No. 20) and granting Plaintiffs' Motion to Compel Appraisal (Dkt. No. 16). The motion is fully briefed.

RSUI's Motion for Reconsideration is **DENIED**; the parties are to conduct appraisal as previously ordered. This Order supplements the factual and legal findings of the prior Order, and sets forth the procedure to be followed in resolving the claims.

1

## II. STANDARD OF REVIEW

Defendant seeks reconsideration under Local Rule 7.1(h)(3), which states:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

## III. DISCUSSION

RSUI alleges eight errors in the Court's previous Order on summary judgment and appraisal. None of the alleged errors constitutes a palpable defect; nor has RSUI demonstrated that correction of anything would result in a different disposition. Nevertheless, the Court elaborates on the previous Order's findings.

### A. Reconsideration

#### 1. Objections 1-5; the Court's Denial of Summary Judgment

RSUI's first five objections challenge the Court's Order denying RSUI's motion for summary judgment. RSUI raises two common issues in these objections: (1) the Court failed to rule on the meaning of the phrase "amount you actually spend;" and (2) the Court adopted Delta's unsupported "cost to repair" figure in finding a fact question exists with respect to the "amount spent." The Court disagrees that either action is error. It need not have ruled on the meaning of "amount you actually spend" in order to have found that the parties disagreed about that amount. Moreover, even if the absence of guidance is a defect, it does not change the outcome. A factual dispute about the cost to replace remains, which is a sufficient basis for the Court to deny summary judgment

2

and to compel appraisal.

RSUI also asserts that the Court mistakenly believed that Plaintiffs had said that $6,021,514.12 was the amount "it has spent," when Plaintiffs only claimed that $6,021,514.12 was the "cost of repair," and that it was erroneous to rely on these unsupported assertions in finding a question of fact about the amount spent. Dkt. No. 32 at 11. RSUI actually appears to have shared a similar understanding, evidenced by its statement "On information and belief, Plaintiffs claim that the amount actually spent to repair the damaged property is in excess of $6 million." Dkt. No. 20, Exhibit A2 at 11.

At its core, however, this objection is a rephrasing of the prior argument that the Court did not rule on the meaning of "amount you actually spend." This alleged error has significance only if the Court adopts RSUI's interpretation of "amount you actually spend" and its allegation about Delta's total out of pocket costs to date. RSUI did not meet its heavy burden to establish entitlement to summary judgment regarding either the interpretive or factual allegations about the amount Delta has spent. Denying summary judgment for one party is not the same as granting it for the other. Thus, this remains an outstanding issue of material fact that has not been resolved in either party's favor.

In addition, RSUI suggests that there are no issues of material fact regarding the value of the cost to replace or about whether cost to replace is the proper valuation number. The briefs before the Court indicate to the contrary; they present factual disputes about multiple valuation issues, including both the amount spent on repairs and the value of the cost to replace.

Delta says the amount spent on repairs was $6,021,514.12. Dkt. No. 25 at 3, 13;

3

Dkt. No. 25 at 16; Dkt. No. 33 at 6 ("actual cost to repair exceeds $6 million"). Of that, it claims it has paid $3,466,425.75 to date, with additional bills outstanding. Dkt. No. 33 at 2. RSUI contends that Delta has only spent $3,466,425.75 to date and that the amount of the outstanding bills cannot be considered under "amount spent." Dkt. No. 32 at 19.

$6 million is not equal to $3.4 million; thus, there is a factual dispute with regard to the amount spent.

The parties also disagree about value of the cost to replace the property. Delta states that "leveling the building to its foundations and rebuilding from there, even if feasible, would have cost over $6 million." Dkt. No. 16 at 9, 14; Dkt. No. 25 at 16; *see also* Dkt. No. 25 ex. 15; Dkt. No. 25 ex. 20 at 4 (providing estimate of cost to replace and supplemental cost that would be incurred by other contractors). By contrast, RSUI contends that the cost to replace is $3,473,499.81. Dkt. No. 20 at 3; Dkt. No. 25 at 13.

Again, there is a factual dispute with regard to the value of the cost to replace.

### 2. Objections 6-8; the Court's Order of Appraisal

With regard to the Court's order to compel appraisal, RSUI alleges that the Court did not rule that certain conditions precedent to appraisal were satisfied.

The Court specifically ruled that Delta did submit replacement estimates to RSUI. By implication, this ruling found that plaintiffs did not fail a condition precedent that resulted from not submitting a cost to replace estimate. For purposes of clarity, the Court now expressly finds that Delta did not fail a condition precedent in the "Duties in the Event of Loss or Damage" by failing to submit an estimate of the cost to replace.

RSUI also alleges that the Court did not provide sufficient guidance about coverage and valuation calculation aspects, including (1) whether RSUI has the right to

choose to pay the cost of replacing the damaged property as opposed to the cost to repair, (2) whether the valuation is based on the cost of replacing the damaged building making repair costs irrelevant, and (3) whether Guaranteed Replacement Cost is the method of valuation for determining the cost to replace. Dkt. No. 32 at 12.

Section II B of this order clarifies these issues, but, for purposes of evaluation of error in this section, the Court finds that it did not make a palpable defect in allegedly failing to determine these issues. The Court explicitly set forth the terms of Guaranteed Replacement Cost ("GRC") as the method of valuation by finding that RSUI need only pay the lesser of the cost to replace or the amount Delta actually spends. With this ruling, the prior order made clear that repair costs are not irrelevant, but rather one aspect of the cap on RSUI's payment obligations. Moreover, the phrase "it is only required to pay the lesser of [two options]" makes clear what options RSUI may choose between, and – by implication – excludes all other choices. Thus, because the Court either explicitly or impliedly answered all of the above questions, there was no palpable defect.

It was also not error to abstain from ruling on whether valuation includes repairs to maintain the building's historical landmark status, as RSUI alleges. Because the question is whether a type of repair cost is included, the Court need not inquire into the purpose of that repair. It is enough to note that the coverage question concerns repair and the chosen valuation is replacement; thus, historical repair costs would be excluded from any replacement calculation. Whether replacement with "a building of comparable material, quality, and size and used for the same purpose on the same premises as the damaged building" would include costs that allow the property to maintain status as a

historical landmark is a distinct inquiry from the question the Court ruled on. The Court declines to answer this separate question, instead leaving the highly fact-intensive and subjective inquiry to the party most familiar with building valuations, the appraisal panel.

### B.     Basis for Appraisal and Interpretation of Contract

RSUI asserts that appraisal of "amount of loss" would not be appropriate where RSUI sought valuation based on cost of replacement. Delta argues that amount of loss should be valued based upon the amount actually spent on repairs.

The structure of the contract agreed upon by the parties caused this conundrum to arise: the contract requires disputes about the amount of loss to be settled by appraisal, yet it also defines the Guaranteed Replacement Cost valuation in a contingent manner as the lesser of "the amount you actually spend" and "the cost to replace." Moreover, a separate provision of the contract lists RSUI's four options to satisfy a claim and the terms it will use to make its valuation. The relevant provisions are:

> Section E.2., titled "Appraisal," states:
>
> If we or you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will elect an umpire. If they cannot agree, either may request that the selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
>
> Section G.5.c., which governs pertinent "Optional Coverages, states:
>
> We will not pay more for loss or damage on a Guaranteed Replacement Cost basis than the lesser of (1) The cost to replace, on the same premises, the damaged building with a building of: (a) comparable material and quality and size; and (b) used for the same purpose; (2) The

amount you actually spend that is necessary to repair or replace the damaged property.

Section E.4, titled "Loss Payment" states:

In the event of loss or damage covered by this Coverage Form, at our option, we will either:
(1) Pay the value of lost or damaged property;
(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
(3) Take all or any part of the property at an agreed or appraised value; or
(4) Repair, rebuild or replace the property with other property of like kind and qualify, subject to b. below.
We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

To reconcile these provisions, a court must abide by certain principles of contract interpretation. First, contracts are read as a whole and terms are enforced according to their plain and ordinary meaning. *Farm Bureau Mut. Ins. Co. v. Buckallew*, 246 Mich. App. 607, 611; 633 N.W.2d 473 (2001). Second, language of insurance contracts is construed to give effect to every word, clause, and phrase. *Klapp v. United Ins Group Agency, Inc.*, 468 Mich. 459, 467; 663 N.W.2d 447 (2003). Third, when the policy language is clear, the specific language of the contract will be enforced. *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 160; 534 N.W.2d 502 (1995).

Section E.4 is most plainly read as specifying the four valuation methods that might be used on a claim, giving RSUI the choice about the method of valuation, and specifying how RSUI will determine the values it attributes to each of the above methods. The most natural reading of section G.5.c is as a limitation on Delta's rights to recover greater than certain specified values; phrased differently, the provision affords RSUI the ability to pay the lesser of two amounts. When read together, section G.5.c.

7

narrows the focus on section E.4.a. and limits RSUI's ultimate payment obligations to the lesser of two methods of calculating the option listed as E.4.a.(2), which states "Pay the cost of repairing or replacing the lost or damaged property."

Section E.2., which sets forth appraisal, is best understood as a mandate for the parties to conduct binding appraisal to determine the amount of the loss when they disagree about the amount of loss. As stated in the Court's original Order, the parties are bound to follow their agreed procedure for disputes about the "amount of loss," appraisal. The parties must proceed to appraisal under section E.2 on a limited basis that still gives effect to contingent and disputed methods of valuation as set forth in and limited by section G.5.c.

The appraisal process could be based upon different valuation methods – hypothetical cost to replace, hypothetical cost to repair, actual cost to repair, or some combination of these. But, interpretation of "amount you spend" and GRC are questions of law that are better reserved to the Court instead of an appraisal panel. *See McKusick v. Travelers Indemnity Co.*, 246 Mich. App. 329, 332; 632 N.W.2d 525 (2001) (The interpretation of an unambiguous insurance contract is a question of law).

Alternative constructions would violate the rules of contract interpretation. Section E.4.a. cannot be read to confer a unilateral right on RSUI to select both the method of loss valuation and to make a binding determination about the amount of the loss; doing so would render section E.2. meaningless. Because the parties disagree about the proper valuation of the replacement cost, Dkt. No. 16 at 17-20, the Court cannot simply follow the GRC calculation of section G.5.c; the Court cannot simply choose the lesser of the amount actually spent to repair and the cost to replace

because both numbers are disputed. Moreover, binding appraisal under section E.2. cannot be interpreted in a manner that allows appraisal to resolve all valuation calculation disputes, because such an approach would render section G.5.c. meaningless.

Thus, a proper reading of all of the provisions, giving them all effect, leads to only one reasonable outcome: appraisal to determine only one possible formulation of "amount of loss," the cost of replacement as understood by the parties in section G.5.c.(1) of the policy. This will be a hypothetical exercise because the property at issue was repaired approximately three years prior to this order and will not be replaced following appraisal. Moreover, such an order comports with RSUI's own request. *See* Dkt. No. 17 at 20 ("If the Court determines that RSUI can choose to pay the cost to replace, as it should, then, if there is an appraisal, the appraisers would determine only the cost to replace.").

### C.    Post-Appraisal Steps

The remaining issue concerns what happens after the appraisal panel determines the cost to replace. Two options are available: (1) the Court enters an order and judgment that the amount due under the policy is the amount found by the appraisal panel; (2) the Court weighs the cost to replace figure against both parties' claims about the appropriate figure for the "amount [Delta] actually spent," then choosing the lesser of the two Guaranteed Replacement Cost ("GRC") figures of section G.5.c. As outlined below, Option 1 is preferable.

The choice among options turns upon whether the GRC provision requires the payment of what ultimately is the lesser valuation or whether it confers a binding option

because both numbers are disputed. Moreover, binding appraisal under section E.2. cannot be interpreted in a manner that allows appraisal to resolve all valuation calculation disputes, because such an approach would render section G.5.c. meaningless.

Thus, a proper reading of all of the provisions, giving them all effect, leads to only one reasonable outcome: appraisal to determine only one possible formulation of "amount of loss," the cost of replacement as understood by the parties in section G.5.c.(1) of the policy. This will be a hypothetical exercise because the property at issue was repaired approximately three years prior to this order and will not be replaced following appraisal. Moreover, such an order comports with RSUI's own request. *See* Dkt. No. 17 at 20 ("If the Court determines that RSUI can choose to pay the cost to replace, as it should, then, if there is an appraisal, the appraisers would determine only the cost to replace.").

### C.    Post-Appraisal Steps

The remaining issue concerns what happens after the appraisal panel determines the cost to replace. Two options are available: (1) the Court enters an order and judgment that the amount due under the policy is the amount found by the appraisal panel; (2) the Court weighs the cost to replace figure against both parties' claims about the appropriate figure for the "amount [Delta] actually spent," then choosing the lesser of the two Guaranteed Replacement Cost ("GRC") figures of section G.5.c. As outlined below, Option 1 is preferable.

The choice among options turns upon whether the GRC provision requires the payment of what ultimately is the lesser valuation or whether it confers a binding option

for RSUI to elect one of the two options. The contract is ambiguous.

RSUI contends that it has elected to and need only pay the replacement cost using its valuation. Dkt. No. 16 at 14. Delta contends that it is entitled to recover either its actual repair cost or the replacement cost, both of which exceed $6 million dollars and RSUI's replacement cost estimate. If the provision commands only payment of the lesser amount, then RSUI's present "election" will not be relevant, because RSUI is only bound to pay whatever is the lesser to the two GRC values. Under this interpretation, further judicial findings would be necessary following appraisal. If, on the other hand, RSUI is bound by its stated election, then no further analysis weighing two valuations under the GRC equation will be necessary once replacement cost is settled; RSUI will be bound by its prior election of replacement cost.

Several factors favor interpreting RSUI's election as binding. RSUI has stated that it has made a permissible election to pay the replacement cost. Dkt. No. 16 at 14. Moreover, throughout its briefs on the Motion for Summary Judgment, the Motion to Compel Appraisal, and now the Motion for Consideration, RSUI has repeatedly emphasized "cost to replace," while declaring the cost to repair irrelevant. Because section G.5.c. affords a right or benefit to RSUI, RSUI could be deemed to have waived exercise of that term. Moreover, RSUI might be equitably estopped from changing its stated election to pay Delta on a cost of replacement basis. Thus, the Court now rules that RSUI had an option to pay the lesser of the two section G.5.c. figures, that it made its choice to pay the replacement cost, and that it will be bound by pay the appraisal panel's determination of the amount of loss, valued on a cost to replace basis.

IV. **CONCLUSION**

10

RSUI's Motion for Reconsideration does not present a palpable defect that will result in a different disposition of the case, and is, therefore, **DENIED**. RSUI and Delta are ordered to proceed with appraisal. The appraisal panel will determine the amount of loss based on the cost to replace.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: January 25, 2016

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 25, 2016.

s/Linda Vertriest
Deputy Clerk